O

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

CERTAIN UNDERWRITERS AT
   LLOYD'S SUBSCRIBING TO
   POLICY NO. M-20304; and
KINGSTON TECHNOLOGY
   COMPANY, INC., a corporation,

        Plaintiffs,

      v.

EXPEDITORS INTERNATIONAL
   OF WASHINGTON, INC., a
   corporation;
LANDSTAR EXPRESS AMERICA
   LLC;
STATEWIDE LOGISTICS LLC, a
   limited liability company; and
DOES ONE through TEN,

        Defendants.

Case No. 8:20-cv-00809-JWH-PJWx

**MEMORANDUM OPINION AND
ORDER ON MOTION OF
DEFENDANT EXPEDITORS
INTERNATIONAL OF
WASHINGTON, INC. FOR
PARTIAL SUMMARY JUDGMENT
[ECF No. 60]**

This case involves highway robbery, missing cargo, and a question of who pays for the loss.  In April 2019, Plaintiff Kingston Technology Company, Inc. contracted with Defendants Expeditors International of Washington, Inc.; Landstar Express America, Inc.; and Statewide Logistics LLC to truck 17 pallets of memory modules from Kingston's principal place of business in Fountain Valley, California, to its receiving department in El Paso, Texas.[1]

On the evening May 2, 2019, drivers working for Statewide embarked on their journey with Kingston's cargo.  Along the way, they stopped to refuel near Coachella, California.  All of the sudden, thieves in a van pulled up behind the truck, cut the locks with bolt cutters, and—in less than 10 minutes—managed to abscond with two-and-a-half pallets of memory modules worth nearly $1,000,000.[2]  This case involves Kingston's efforts to recoup its losses from Defendants.

Before the Court is Expeditors' motion for partial summary judgment.[3] The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[4] the Court orders that the Motion is **GRANTED in part** and **DENIED in part**, as set forth herein.

## I.  PROCEDURAL HISTORY

In April 2020, about a year after the parties entered into their contract, Kingston and its then-co-plaintiff, Certain Underwriters at Lloyd's Subscribing

---

[1]   Am. Compl. (the "Amended Complaint") [ECF No. 43] ¶ 10; *see also* Decl. of John Esterly in Supp. of Def.'s Mot. for Partial Summ. J. (the "Esterly Declaration") [ECF No. 60-9], Ex. C (the "Contract") [ECF No. 60-12] 1.

[2]   Decl. of Andrew D. Kehagiaras in Supp. of Def.'s Mot. for Partial Summ. J., Ex. A (the "Email Exhibit") [ECF No. 60-4] A–1.

[3]   Def.'s Mot. for Partial Summ. J. ("Motion") [ECF No. 60].

[4]   The Court considered the following papers:  (1) Amended Complaint; (2) the Motion (including its attachments); (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 61]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 63].

to Policy No. M-20304, filed their Complaint for Non-Delivery of Cargo in this Court.[5]  Expeditors subsequently filed crossclaims against its co-defendants, Landstar and Statewide, for equitable indemnification and contribution.[6]  Less than two weeks later, Statewide asserted the same two crossclaims against Expeditors.[7]  Landstar then followed suit and asserted four crossclaims against Expeditors for breach of contract, equitable indemnity, contribution, and declaratory relief.[8]

In October 2020, Kingston filed an Amended Complaint,[9] in which it asserted five claims for relief:  (1) breach of bailment; (2) negligence; (3) breach of contract for failure to delivery cargo per their bill of lading no. HO70299344; (4) breach of contract for failing to provide security services; and (5) in the alternative, violation of 49 U.S.C. § 14706 (the "Carmack Amendment").[10] The parties then attempted to mediate their dispute, but they could not reach a resolution.[11]

In August 2021, Expeditors moved for partial summary judgment with respect to liability under Kingston's third claim for relief and for full summary

---

[5]      *See generally* Compl. [ECF No. 1].  Lloyd's is a group of insurance syndicates associated with Lloyd's of London.  *Id.* at ¶ 1.  Lloyd's issued to Kingston a policy of insurance through which Lloyd's agreed to indemnify Kingston against any loss or damage of the cargo.  *Id.* at ¶ 7.

[6]      Crosscl. of Expeditors against Crossdefs. Landstar and Statewide [ECF No. 20] ¶¶ 7-15.

[7]      Crosscl. of Statewide against Crossdef. Expeditors [ECF No. 25] ¶¶ 7-11.

[8]      Crosscl. of Landstar against Crossdef. Expeditors [ECF No. 29] ¶¶ 6-23. The fourth crossclaim is unlabeled, but it is based upon 28 U.S.C. § 2201.  *Id.* at ¶ 23.

[9]      Lloyd's did not join Kingston as a plaintiff in the Amended Complaint. Accordingly, Lloyd's is no longer a party in this case.  *See* Joint Rule 26(f) Report [ECF No. 36] 3:11-4:3.

[10]      *See generally* Amended Complaint.

[11]      Mediation Report [ECF No. 58].

judgment on Kingston's other four claims.[12]  Kingston opposed a week later,[13] and Expeditors filed a timely reply.[14]

In December 2021, the parties notified the Court that Kingston and Statewide had settled.[15]  As a result of that settlement, Expeditors and Statewide dismissed their respective crossclaims with prejudice.[16]  Expeditors and Landstar also stipulated to dismiss their respective crossclaims, albeit without prejudice.[17]

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  The substantive law determines the facts that are material.  *Id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  Factual disputes that are "irrelevant or unnecessary" are not counted.  *Id.*  A dispute about a material fact

---

[12]    *See generally* Motion.

[13]    *See generally* Opposition.

[14]    *See generally* Reply.

[15]    Stipulation and Proposed Order to Dismiss All Crosscls. (the "Stipulation") [ECF No. 69] ¶ 1.

[16]    *Id.* at ¶ 2.

[17]    *Id.* at ¶ 3.

is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

### III.  FACTS

Expeditors is a supply chain, transportation, customs, and warehousing and distribution provider based in Washington state.[18] Expeditors has served as

---

[18]     Amended Complaint ¶ 2; Motion 2:3-5. While Kingston does not dispute that description of Expeditors' business, Kingston would augment it to include

a customs broker for Kingston since at least March 2002 and has provided motor transportation services to Kingston between the Los Angeles area and El Paso, Texas, since about 2015.[19]  Expeditors also works with Landstar, a property broker, to arrange for the transportation of cargo.  In this matter, Expeditors requested Landstar to arrange for such transportation subject to certain security requirements.[20]

In April 2019, Kingston communicated with Expeditors regarding transporting high-value cargo from Fountain Valley, California, to El Paso, Texas.[21]  Kingston asked for heightened security measures, which included the following:  (1) hiring a driving team (as opposed to a solo driver); (2) leveraging GPS fencing technology and monitoring; and (3) implementing a rule prohibiting any stops within 200 miles of the pick-up location or at any point for more than one hour.[22]  When Kingston made that inquiry, Expeditors replied to Kingston via email that "Landstar has capacity" to accomplish the transportation and quoted the price of $4,193, which is the amount that Expeditors later invoiced to Kingston.[23]  Included in that price was $3,300 for the freight, $693 for a fuel surcharge, and $200 for the "Secure Service,"[24] which referred to the GPS fencing technology offered through Expeditors'

---

that Expeditors also constitutes a carrier with respect to the subject shipment.  *See* Pl.'s Resp. to Def.'s Statement of Uncontroverted Facts and Conclusions of Law ("Expeditors' SUFCL") [ECF No. 61-15] ¶ 5.

[19]     Expeditors' SUFCL ¶¶ 9-11.  Kingston does not dispute the accuracy of those statements, but it objects to them as irrelevant, misleading, and prejudicial under Rules 401 and 403 of the Federal Rules of Evidence.  *See* Pl.'s Objs. to Evid. [ECF No. 61-16] ¶¶ 9-11.  The Court disagrees and **OVERRULES** those objections; this evidence speaks directly to the length and nature of the parties' relationship to each other, and, therefore, its probity outweighs any prejudicial value.

[20]     Expeditors' SUFCL ¶ 8; *see also* Motion 6:5-11.

[21]     Expeditors' SUFCL ¶ 14.

[22]     *Id.* at ¶¶ 37-39; *see also* Motion 3:6-12.

[23]     Expeditors' SUFCL ¶ 17.

[24]     *Id.* at ¶¶ 17-23.

subsidiary, non-party Cargo Signal Solutions, LLC (formerly known as "Secure Services").[25]  Expeditors subsequently instructed Landstar to arrange the transportation using certain security requirements, which were documented in a writing that Expeditors calls a "trip form."[26]  Landstar, in turn, arranged for motor carrier Statewide to transport the cargo.[27]

After finalizing the transportation arrangements, Expeditors generated a two-page "Contract of Carriage" to serve as the bill of lading, which has been Expeditors' custom and practice.[28]  The front page of the Contract of Carriage refers to Expeditors' "Service Conditions" with a link to its web address.[29]  The Contract of Carriage also includes a line providing that Kingston could declare the value of the cargo prior to transportation, but Kingston wrote "N.V.D." on that line—which is undisputed to mean "No Value Declared."[30]

At around 4:00 p.m. on May 2, 2019, Statewide's team of two drivers departed from Kingston's warehouse with the cargo stored in a sealed trailer. Although the Amended Complaint makes no mention of why some of the cargo vanished later that evening,[31] an email from Kingston's Director of Finance supplies the details of the theft:

> At approximately 8 pm on 5/2/19, during a refueling stop in Coachella, California, thieves in a van pulled up behind the truck, cut the locks with bolt cutters and proceeded to steal 2.5 of the 17 pallets. One of the drivers exited the truck to investigate.  Once the driver

---

[25]     Def.'s Resp. to Pl.'s Separate Statement of Undisputed Facts ("Kingston's SSUF") [ECF No. 63-1] ¶ 2.

[26]     Expeditors' SUFCL ¶¶ 34 & 35.

[27]     *Id.* at ¶ 36.

[28]     *Id.* at ¶ 12; Kingston's SSUF ¶¶ 33 & 34.

[29]     Expeditors' SUFCL ¶ 13.

[30]     *Id.* at ¶¶ 50 & 51.

[31]     *See generally* Amended Complaint.

was seen by the thieves they quickly departed the scene with $913,656 of memory modules.[32]

Furthermore, it is evident from GPS transmission data that the entire pit stop—and act of theft—took less than 10 minutes.[33]  Despite its brevity, Expeditors concedes that this pit stop violated one of the security requirements related to the shipment.[34]

The subject shipment was covered by a policy written by non-party Falvey Cargo Underwriting and insured through Lloyd's.[35]  Kingston procured that policy for all of its shipments well before events of this case occurred.[36]

## IV.  DISCUSSION

Expeditors now seeks partial summary judgment with respect to the third claim for relief—breach of the Contract of Carriage—and full summary judgment with respect to the other four claims.  Expeditors does not contend that it did not breach the Contract of Carriage.[37]  Rather, Expeditors seeks to enforce the limitation-of-liability clause contained therein, which would limit Expeditors' liability to $0.50 per pound.[38]  When multiplied with the weight of the memory modules, that limitation would reduce Expeditors' liability from $913,656.25 to $462.50.[39]

The Court begins its analysis with the question of which state's law to apply.  It considers the Contract of Carriage's choice-of-law provision, which directs the Court to adopt Washington's state law.  But, because Kingston

---

[32]    *See* Email Exhibit; *see also* Expeditors' SUFCL ¶ 2.
[33]    Expeditors' SUFCL ¶¶ 42-49.
[34]    Kingston's SSUF ¶¶ 41-45.
[35]    *Id.* at ¶ 22.
[36]    *Id.* at ¶ 25.
[37]    *See generally* Motion & Reply.
[38]    Motion 13:8-17:22.
[39]    Opposition 1:27-28.

-8-

attacks the validity of the Contract *in toto* under the material deviation doctrine, the Court cannot rely solely on the Contract's choice-of-law provision. Moreover, the Court also finds there are genuine disputes of material fact with respect to the breach of the Contract of Carriage and the existence of a separate, risk-related agreement.[40]

That finding leaves the validity of the Contract of Carriage in limbo. As a result, the Court is forced to conduct parallel analyses of Kingston's remaining state law claims for bailment and negligence: one analysis assumes the Contract's choice-of-law provision survives, while the other analysis does not. For the first analysis, the Court applies Washington state law. For the latter analysis, the Court applies the law of the state that emerges from an independent choice-of-law analysis (in this case, California). Regardless of the Contract's validity, the Court finds that the outcome is the same: Kingston cannot succeed on its bailment claim, and Expeditors cannot prevail on its motion for summary judgment on the negligence claim. Accordingly, the Court grants Expeditors' Motion only with respect to Kingston's first claim of relief.

## A.   Choice-of-Law

### 1.   Validity

As a threshold matter, the Court faces a choice-of-law question with respect to the four state-law claims that Kingston asserts. In its Motion, Expeditors argues generally that Washington state law applies because the Contract of Carriage includes a choice-of-law clause, which provides that "the rights and obligations of the parties shall be determined according to the laws of the State of Washington."[41]

---

[40]   The "breach of contract claims" refers to Kingston's third and fourth claims for relief. The "Carmack Amendment claim" refers to Kingston's fifth claim for relief.

[41]   Motion 12:1-5.

Courts applying California law will ordinarily uphold the parties' stated intentions and will enforce a choice-of-law clause.  *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).  Only in limited circumstances will a court decline to enforce such clauses; *e.g.*, where "(1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to a California public policy or evade a California statute." *Menlo Logistics, Inc. v. W. Exp., Inc.*, 2005 WL 2334358, at *8 (N.D. Cal. Sept. 23, 2005) (quoting *Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995)).  Neither exception applies here.  The Court agrees that a substantial relationship with Washington state exists, since Expeditors is a Washington corporation and its principal place of business is located in Seattle.[42] *Ford Motor Credit Co. v. Segal*, 97 F. App'x 166, 168 (9th Cir. 2004) (unpublished) (finding a substantial relationship where one of the parties to the contract had its principal place of business in the state identified in the choice-of-law clause).  Kingston does not dispute that finding, nor does it offer any reason why the application of this choice-of-law clause contravenes California's public policy.[43]  Accordingly, the Court finds Expeditors' choice-of-law clause facially valid.

### 2.  Scope

Courts in California construe choice-of-law clauses to cover all claims related to or arising out of the contract.  *See Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 470 (1992) ("a valid choice-of-law clause . . . encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates); *see also* John F. Coyle, *The*

---

[42]      *Id.* at 13:3-6.

[43]      *See* Opposition 7:12-26.

*Canons of Construction for Choice-of-Law Clauses*, 92 Wash. L. Rev. 631, 673-77 (2017) (collecting cases).  Because Kingston's claims for bailment, breach of contract, and negligence all arise out of the same transaction and surrounding events, this Court finds that—all else equal—it would be appropriate to apply Washington state law to those claims.

But all else is not equal.  Kingston counters that relying on the Contract of Carriage's choice-of-law provision is suspect.  Kingston alleges that Expeditors breached the contract in such a way that it qualified as a "material" deviation; *i.e.*, one so significant that it warrants rescinding the contract in its entirety.[44] For support, Kingston cites *Philco Corp. v. Flying Tiger Line, Inc.*, 18 Mich. App. 206, 223 (1969).[45]  If rescission is warranted, then the Court must conduct a choice-of-law analysis for each of the state-law claims, because what law applies could no longer be predicated on the Contract of Carriage's choice-of-law clause.  *See Coughlin v. Trans World Airlines, Inc.*, 847 F.2d 1432, 1434 (9th Cir. 1988) (noting that "[i]t is axiomatic that a material breach of an agreement warrants rescission").  Conversely, if the court finds no material dispute constituting a material deviation, then the Court will deem the choice-of-law provision valid and will apply Washington state law.

**B.     Validity of the Contract of Carriage**

**1.     The Material Deviation Doctrine**

Turning to the Contract of Carriage itself, Kingston invites this Court first to evaluate whether the alleged breaches were so substantial as to render the contract rescinded.  Kingston invokes the so-called material deviation doctrine,[46] a concept borrowed from admiralty law.  *See Praxair Inc. v. Mayflower Transit, Inc.*, 919 F. Supp. 650, 652 (S.D.N.Y. 1996).  A material deviation is a

---

[44]     *Id.*

[45]     *Id.* at 7:19-22.

[46]     *Id.* at 8:28-14:4; Reply 2:9-12.

1   "voluntary departure without necessity, or any reasonable cause, from the

2   regular and usual course of the voyage." *Vision Air Flight Serv., Inc. v. M/V*

3   *Natl. Pride*, 155 F.3d 1165, 1175 (9th Cir. 1998) (quoting *Constable v. Natl. S.S.*

4   *Co.*, 154 U.S. 51, 66 (1894)) (internal quotations omitted).  When that deviation

5   is "so great" as to change completely "the risk and terms of the contract, the

6   shipper should not be bound by the contract, that is, the contract should be

7   rescinded." *Info. Control Corp. v. United Airlines Corp.*, 73 Cal. App. 3d 630, 641

8   (1977) (quoting *Philco Corp.*, 18 Mich. App. at 223).

9          Ordinarily, where an agreement limiting liability under the Carmack

10  Amendment exists, liability is governed exclusively by that agreement,

11  irrespective of the degree of negligence attributable to the carrier.  *See Deiro v.*

12  *Am. Airlines, Inc.*, 816 F.2d 1360, 1366 (9th Cir. 1987); *see also Rocky Ford Moving*

13  *Vans, Inc. v. U.S.*, 501 F.2d 1369, 1372 (8th Cir. 1974) (holding that the material

14  deviation doctrine does not apply to Carmack Amendment cases).  However, in

15  this case, the parties waived any and all provisions of the Carmack Amendment

16  under the terms of the Contract of Carriage.[47]  49 U.S.C. §§ 13102, *et seq*.

17  Accordingly, this Court finds that invocation of the material deviation doctrine

18  is not *prima facie* preempted.

19         Some courts have applied the material deviation doctrine to non-

20  admiralty cases to rescind the limitation-of-liability clause or even the entire

21  contract.  *See, e.g.*, *Johnson v. Bekins Moving & Storage Co.*, 86 Idaho 569 (1963)

22  (motor carrier) (rescinding limitation of liability clause in bill of lading when

23  shipper failed to follow instructions to protect a high-value stereo); *Philco Corp.*,

24  18 Mich. App. at 223 (air carrier) (instructing lower court to rescind contract if,

25  on remand, it found the shipper's failure to keep memory modules upright was a

26

27  ---
    [47]     *See* Contract 2, ¶ 19; Reply 6:21-27.  Because of that waiver, the Court can
    distinguish Expeditors' reliance on *KLLM, Inc. v. Watson Parma, Inc.*, 634
28  F. Supp. 2d 699, 709 (S.D. Miss. 2009) (finding limitation of liability enforceable
    in an overland transportation contract governed by the Carmack Amendment).

material breach); *Coughlin*, 847 F.2d at 1434 (air carrier) (reversing the district court's grant of summary judgment on limitation of liability where airline lost an urn containing ashes of plaintiff's deceased husband); *Info. Control Corp.*, 73 Cal. App. 3d at 632 (air carrier) (affirming lower decision to rescind contract when the carrier breached its promise to ship computer modules non-stop and that breach subsequently led to the cargo going missing in an overnight warehouse); *Praxair Inc.*, 919 F. Supp. at 655 (motor carrier) (finding that, if the trier-of-fact found that defendant failed to provide special air-ride blanket services to protect plaintiff's equipment, that would render the limitation of liability clause unenforceable); *Nipponkoa Ins. Co. v. Watkins Motor Lines, Inc.*, 431 F. Supp. 2d 411, 419 (S.D.N.Y.2006) (motor carrier) (applying the doctrine to rescind the limitation of liability where specific security guidelines were negotiated and agreed to by parties and the carriers' breach of those guidelines resulted in the loss of the shipment of laptop computers). Notwithstanding that collection of cases, extending the material deviation doctrine to regulated interstate commerce is still an issue "far from settled." *Exel, Inc. v. S. Refrigerated Transport, Inc.*, 259 F. Supp. 3d 767, 780 (S.D. Ohio 2017).

Where courts **have** recognized the viability of the material deviation doctrine in the Carmack Amendment context, they have done so narrowly— only in those instances where "the carrier made a special, separate promise to the shipper about special conditions of carriage designed to lessen the risk of harm to the shipper's particular cargo." *Hill Const. Corp. v. Am. Airlines, Inc.*, 996 F.2d 1315, 1319 (1st Cir. 1993) (collecting cases); *see also Exel, Inc.*, 259 F. Supp. 3d at 781. When courts have rejected the material deviation doctrine, "[s]pecial safety measures arranged and paid for by the shipper are conspicuously absent." *Praxair Inc.*, 919 F. Supp. at 655. The court in *Praxair* continues:

On review, and when organized in accordance with Justice Breyer's observations in *Hill*, the case law establishes that in cases of shipment by air, rail, and truck where the shipper paid an additional charge to ensure specialized safety measures to reduce the risk of damage to its cargo, the carrier's failure to perform those very measures which resulted in damage to the cargo has been found to be a sufficient basis upon which the liability limitation provision in the shipping agreement may be rescinded.

*Id.* at 655-56; *cf. Nissan Fire & Marine Ins. Co., Ltd. v. N. Am. Van Lines, Inc.*, 1997 WL 811779, at *3 (N.D. Cal. Dec. 29, 1997) (declining to follow *Praxair* where no special safety measures were at issue).

### 2. Genuine Dispute

The parties invoke the material deviation doctrine, which requires the Court to address two questions:

- Was there a separate, risk-related promise or agreement?
- If so, was there a material deviation so great as to warrant rescission?

Because this case reaches the Court on a motion for summary judgment, it does not reach those questions. Rather, the Court must evaluate only whether any genuine issues of material fact exist.

### a. Separate Risk-Related Promise or Agreement

In its fourth claim for relief, Kingston sues Expeditors for breach of contract regarding a ***separate*** agreement for additional security measures.[48] But the parties dispute whether a separate agreement exists. While the parties agree that certain security requirements were to be followed in the course of the trip,[49] their respective positions diverge from there. Expeditors characterizes those

---

[48]   Amended Complaint ¶¶ 23-27.

[49]   *See, e.g.*, Expeditors' SUFCL ¶¶ 14-16; Kingston's SSUF ¶¶ 3 & 4.

-14-

security requirements simply as internal operational guidelines, not an entirely separate contract.[50]  In contrast, Kingston argues that those security requirements are codifications of representations that Expeditors made to Kingston concerning additional security services.[51]  In Kingston's view, the security requirements constitute a separate agreement.

Kingston refers to undisputed facts that Kingston emailed Expeditors requesting team drivers, GPS/GPS fencing, and constant monitoring.[52] Kingston also points out that Statewide knew that Kingston's cargo was a "high value load" with "specific requirements."[53]  Additionally, Kingston cites the deposition of John Esterly, a Risk Management and Insurance manager at Expeditors,[54] who testified that a customer shipping a high-value load could potentially opt out of certain security requirements if it so desired.[55]

In response, Expeditors references the integration clause in the Contract of Carriage, which provides that the Contract of Carriage "supercedes [*sic*] and replaces any other written or oral agreement, promise, representation and/or understanding between the parties with respect to the shipment tendered hereunder."[56]  Expeditors maintains that that integration clause forecloses the possibility of a separate contract.[57]

Expeditors' argument fails, though, because there need not be a second contract for the material deviation doctrine to apply.  *See Info. Control Corp.*, 73

---

[50]     Motion 16:1-12.

[51]     Opposition 17:17-18:18; Expeditors' SUFCL ¶ 54; Kingston's SSUF ¶ 4.

[52]     Expeditors' SUFCL ¶¶ 15 & 54.

[53]     *Id.* at ¶¶ 37-41.

[54]     Esterly Declaration ¶ 1.

[55]     Expeditors' SUFCL ¶¶ 32 & 33; Kingston's SSUF ¶ 12; Decl. of Joshua E. Kirsch in Supp. of the Opposition, Ex. A (Zoom Dep. of John Esterly) [ECF No. 61-2] 24:4-12.

[56]     Motion 17:9-13; *see also* Contract 2, ¶ 4.

[57]     Motion 17:5-13.

Cal. App. 3d at 634 (shipment governed by a single air bill); *Philco Corp.*, 18 Mich. App. at 209-10 (single air bill with requests made for cargo to be shipped horizontally).  The relevant inquiry is not whether the request for extra security measures constitutes an entirely separate stand-alone contract, but simply whether those requested security measures were truly additive.  That is a question of fact currently disputed here and best suited for a jury to resolve.

The parties also dispute whether Kingston paid additional consideration for those measures.  Kingston contends that it paid additional charges for the Secure Services and other security protocols, such as team drivers.[58]  With respect to the specific charge for Secure Services, the Court finds this fact to be undisputed, but immaterial.  Expeditors does not dispute that it offered—and that Kingston paid for—its "Secure Service" GPS monitoring.[59]  But that fact is a bit of a red herring because the parties agree that the GPS monitoring was performed (and, accordingly, there could be no issue of breach).[60]  But, with respect to the team drivers, the Court finds a genuine dispute of material fact.  Expeditors alleges that it did not charge Kingston extra for arranging the transportation and the use of team drivers.[61]  In contrast, Kingston alleges that it paid higher freight and fuel surcharges precisely because it requested team drivers, rather than solo drivers.[62]

In summary, Kingston offers sufficient evidence to show some bargaining and a request for additional security measures, but it is in dispute whether those security measures were truly extra and whether Kingston paid a higher rate for team drivers.  *Cf. Certain Underwriters at Lloyd's London v. BE Logistics, Inc.*, 736

---

[58]   Kingston's SSUF ¶ 6.
[59]   *Id.*
[60]   Expeditors' SUFCL ¶¶ 27-31 & 46-49; Reply 1:13-16.
[61]   Reply 1:21-28; Kingston's SSUF ¶ 13.
[62]   Kingston's SSUF ¶¶ 6-8.

F. Supp. 2d 1311, 1316 (S.D. Fla. 2010) (finding no separate risk-related promise where plaintiff could point to no evidence of negotiation or additional consideration paid for additional security measures).  Those disputes alone establish that the fourth claim for relief cannot be resolved on summary judgment.

### b.  Material Deviation

The Court also finds that the question of material deviation is in dispute. Expeditors insists that there could be no material deviation because it provided the GPS monitoring and arranged for team drivers, as requested.[63]  But Kingston asserts that the breach occurred because the team drivers left the truck unattended during an unauthorized pit stop, in violation of Kingston's requested security protocols.[64]

As one court observed, "there is a shadowy line between the type of 'fundamental breach' which permits rescission coupled with reimbursement and the type of misconduct in the performance of the contract—whether labeled negligence or gross negligence—which restricts the shipper to the terms of the tariff." *Info. Control Corp.*, 73 Cal. App. 3d at 641.  Because the question of breach for the purposes of material deviation is a question of fact, the Court finds this issue inappropriate for resolution on summary judgment.

### 3.  Conclusion on the Contract of Carriage

In sum, there is a genuine dispute of material fact regarding whether a material deviation occurred.  Because of that dispute, the Court can neither vitiate nor enforce the limitation-of-liability clause.  Accordingly, the Court must **DENY** Expeditors' Motion for Partial Summary Judgment with respect to Kingston's third claim for relief.  Similarly, because the existence of a contract is

---

[63]   Reply 2:14-21.

[64]   Opposition 3:13-18; Kingston's SSUF ¶ 18.

a question of fact, *see* 17A Am. Jur. 2d *Contracts* § 18 (2021), and the parties dispute whether a separate risk-related promise was made, the Court must also **DENY** Expeditors' Motion for Summary Judgment with respect to Kingston's fourth claim for relief.

This conclusion has implications for the fifth claim for relief regarding the Carmack Amendment, which Kingston pleads in the alternative.[65]  Although the parties contracted out of the application of the Carmack Amendment,[66] the Court necessarily cannot adjudicate it when the entirety of the contract may be rescinded.  Therefore, the Court must **DENY** Expeditors' Motion for Summary Judgment with respect to Kingston's fifth claim for relief.

**C.   Remaining State-Law Claims**

The results of the prior analysis put the remaining state-law claims in limbo with respect to the threshold question of which state's law to apply.  If the Contract of Carriage is deemed valid, then the Court would apply Washington law; if not, it must conduct a choice-of-law analysis for bailment and negligence.

This fact alone, however, does not lead to the conclusion that summary adjudication is unwarranted.  If the results are the same regardless of which state's law is applied, then the Court should proceed.  On the other hand, if a conflict-of-law analysis requires the application of the law of a state other than Washington ***and*** the application of that law leads to a divergent result, then the Court would find that summary adjudication is improper at this time.

**1.   Bailment**

Kingston first claim for relief is breach of bailment against all Defendants.[67]  Expeditors contends that that claim should be dismissed because its Contract of Carriage displaces the possibility of a bailment relationship as a

---

[65]   Amended Complaint ¶¶ 28-32.
[66]   Motion 11:25-28.
[67]   Amended Complaint ¶¶ 9-12.

1    matter of law.[68]  Kingston responds that a bailment relationship can arise outside

2    of contract, although it cites no authority for that point.[69]

### a.    Applying Washington's Law of Bailment

3
4            Assuming that the Contract of Carriage is valid, the Court would apply

5    Washington law to the bailment claim since it arises out of the same transaction

6    and events.  *See Nedlloyd Lines B.V.*, 3 Cal. 4th at 470.  In Washington, a

7    bailment "arises generally when personalty is delivered to another for some

8    particular purpose with an express or implied contract to redeliver when the

9    purpose has been fulfilled."  *Eifler v. Shurgard Capital Mgmt. Corp.*, 71

10   Wash. App. 684, 689 (1993) (internal quotations omitted).  Before a bailment of

11   personal property arises, "there must be a change of possession and an

12   assumption or acceptance of possession by the person claimed to be a bailee."

13   *Collins v. Boeing Co.*, 4 Wash. App. 705, 711 (1971).

14           Bailments may be for mutual benefit of bailor and bailee.  This category of

15   bailments includes "all nongratuitous bailments and arise[s] when both parties

16   to the contract receive a benefit flowing from the bailment."  *Am. Nursery*

17   *Products, Inc. v. Indian Wells Orchards*, 115 Wash. 2d 217, 232 (1990).  A bailor

18   owes an ordinary duty of care unless a heightened duty is expressly assumed via

19   contract.  *St. Paul Fire & Marine Ins. Co. v. Charles H. Lilly Co.*, 48 Wash. 2d

20   528, 536 (1956).  Additionally, parties to a mutually beneficial bailment can

21   contract to limit their liability, *see Am. Nursery Products, Inc.*, 115 Wash. 2d at

22   230, unless the bailee is a professional bailee—*i.e.*, someone "who deal[s] with

23   the public on a uniform rather than on an individual basis, including primarily

24   owners of parcel checkrooms, owners of parking places, garagemen, and

25   warehousemen."  *Id.* at 231 (internal citations omitted).  "It is well settled in

26

27   _____
     68      Motion 18:13-24.

28   69      Opposition 19:25-20:3.

-19-

Washington that professional bailees may not limit their liability for negligence." *Id.* at 230; *see also Wagenblast v. Odessa Sch. Dist. No. 105-157-166J*, 110 Wash. 2d 845, 849 (1988) (where a defendant is a common carrier, an innkeeper, or a public utility, an agreement discharging the defendant's performance will usually not be given effect).

Applying that law, the Court finds that the bailment claim cannot render Expeditors or Landstar liable because Kingston has not shown that Expeditors or Landstar assumed or accepted possession of the cargo as a bailee. *State v. Hiatt*, 2021 WL 1929311, *5 (Wash. App. Div. 3 May 13, 2021), *review denied*, 198 Wash. 2d 1015 (2021) (finding no implied bailment where defendant never admitted to accepting possession of a missing vehicle). No facts support the finding that an exchange of possession occurred between Kingston and Expeditors or Kingston and Landstar, even if Expeditors and Landstar were both involved with sourcing Statewide as the motor carrier subcontractor.[70] The record shows only that Statewide took possession of Kingston's cargo when its tractor-trailer and team of drivers left Kingston's warehouse on May 2, 2019.[71] Because Statewide and Kingston have already settled, there is no longer a viable claim for bailment against any Defendant.

> **b.    Applying the Law from a Choice-of-Law Analysis for Bailment**

If the Contract of Carriage were rescinded in full, then the Court would look to California's choice-of-law rules to determine which state's law to apply, as federal district courts must apply the choice-of-law rules prevailing in the state where they are located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,

---

[70]    *See* Expeditors' SUFCL ¶¶ 8, 16, 28, 35-38, 42, & 44-46; Kingston's SSUF ¶¶ 37 & 42.

[71]    Expeditors' SUFCL ¶ 44.

1    496 (1941); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 902 F.2d 1400, 1402 (9th

2    Cir. 1990).

3            "Questions of choice of law are determined in California . . . by the

4    governmental interest analysis." *Offshore Rental Co. v. Contl. Oil Co.*, 22 Cal. 3d

5    157, 161 (1978) (internal quotations omitted).  Under that approach, the Court

6    "must search to find the proper law to apply based upon the interests of the

7    litigants and the involved states."  *Id.*  There are three steps, the first of which is

8    to "examine the laws of the states involved" to determine if there is a true

9    conflict.  *Denham v. Farmers Ins. Co.*, 213 Cal. App. 3d 1061, 1065 (1989).  There

10   is "obviously no problem" where the laws of the two states are "identical."

11   *Hurtado v. Super. Ct.*, 11 Cal. 3d 574, 580 (1974).  If there are material

12   differences, the Court proceeds to the second step and determines what interest,

13   if any, each state has in having its own law applied to the case.  *Id.*  If both states'

14   laws differ and each state has an interest in applying its law to the case, only then

15   does the Court reach the third step of its analysis and evaluate which state's

16   interests would be "more impaired" if its law were not applied.  *Offshore Rental

17   Co*, 22 Cal. 3d at 165.

18           In this case, multiple states are involved.  California is the domicile of

19   Kingston, the site of the robbery, and the location of the alleged breach of

20   bailment.[72]  Washington is the domicile of Expeditors, and Delaware is the

21   domicile of Landstar.[73]  Thus, the Court assesses the law of bailment in each

22   state respectively to ascertain first if the law differs and then whether or not a

23   true conflict exists.

24

25

26

27   ───────────────
     [72]    Amended Complaint ¶¶ 1 & 10.

28   [73]    *Id.* at ¶¶ 2-4.

### i.      Conflicting Laws

Across California, Delaware, and Washington, the laws of bailment are not identical, although they are similar.  Superficially, they vary in language.  Substantively, they vary, at times, with respect to the standard of care and what exceptions exist to the parties' ability to limit liability.  The law of Washington is described above, so the Court will briefly summarize the laws of California and Delaware.

### (a)      California

In California, a bailment—known as a deposit in the Civil Code—is "the deposit of personal property with another, usually for a particular purpose, under an express or implied contract."  13 Witkin, *Summary of Cal. Law*, Personal Property § 164 (11th ed. 2021).  The purpose may be to "use or repair, keep, transport, sell, or exchange it."  *Id.*

"Bailments may be voluntary or involuntary; a bailment for the benefit of both parties . . . is a bailment for hire, and imposes on the bailee the duty to use ordinary care with respect to the bailed property."  *Gebert v. Yank*, 172 Cal. App. 3d 544, 551 (1985); *see also* Cal. Civ. Code § 1814.  The liability of a depositary for negligence "cannot exceed the amount which he is informed by the depositor, or has reason to suppose, the thing deposited to be worth."  Cal. Civ. Code § 1840.

Common carriers' ordinary liability is that of a bailee for hire.  *Klein v. Baker*, 112 Cal. App. 157, 160-61 (1931).  Freight forwarders are normally responsible only for selecting a reliable common carrier, unless they expressly assume responsibility for the transportation—in which case they become a freight forwarder with common carrier liability.  13 Witkin, *Summary of Cal. Law*, Personal Property § 185(a) (11th ed. 2021); *see also Merchant Shippers Ass'n v. Kellogg Exp. & Draying Co.*, 28 Cal. 2d 594, 597-98 (1946).

### (b)    Delaware

In Delaware, bailments are defined as "a contract, such as arises where one delivers property to another to keep for hire either express or implied." *Lee Tire & Rubber Co. of State of N. Y. v. Dormer*, 48 Del. 578, 583 (1954). A bailment occurs when one party retains legal title to a chattel but control and possession of the property is transferred to the bailee. *Bell v. Blizzard Ent., Inc.*, 2013 WL 12132044, at *9 (C.D. Cal. July 11, 2013) (quoting *Golt by Golt v. Sports Complex, Inc.*, 644 A.2d 989, 992 (Del. Super. 1994)). Unlike the other two states in question here, "if the relationship between the Defendant and the Plaintiff is a bailment, strict liability will apply." *Golt by Golt*, 644 A.2d at 992.

### ii.    True Conflict

Even though the laws of these states differ on the margins, a "true conflict" arises only if each state has an interest in having its law applied. *Hurtado*, 11 Cal. 3d at 585. Here, the burden rests on Expeditors and Landstar to show why their forum states have an interest in applying their law in the case at bar. "[I]f the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied," then the Court "may properly find California law applicable" without analyzing comparative impairment. *Washington Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 920 (2001).

Landstar does not seek to invoke Delaware law, so the analysis ends there. Expeditors argues for the application of Washington law, but it provides no reason why Washington would have an interest in enforcing its law of bailment in this case.[74] As the party litigant who "invoke[d] the law of a foreign state," Expeditors "must demonstrate" that applying Washington's law of bailment "will further the interest of [Washington]." *Hurtado*, 11 Cal. 3d at 581.

---

[74]    *See* Motion 17:24-18:24.

Expeditors does not do so. In view of Expeditors' silence, as well as the reasonable inference that California would have an interest in protecting its citizens through its bailment laws, *cf. Van Winkle v. Allstate Ins. Co.*, 290 F. Supp. 2d 1158, 1163 (C.D. Cal. 2003) (noting that California tends to have an interest in protecting tort victims), the Court concludes that California's law of bailment applies absent a valid choice-of-law provision. *See* Cal. Civ. Code §§ 1813 *et seq.*

### iii.    Genuine Dispute

Although Expeditors moves for summary judgment, Kingston bears the burden at trial to prove the elements of bailment, including damages, against all Defendants. *See* 9 Cal. Jur. 3d *Bailments* § 50 (2021). Thus, Expeditors and Landstar need only prove, initially, that there is an absence of evidence to support Kingston's case. *See Celotex*, 477 U.S. at 325.

To succeed on a California bailment claim for relief, the depositor must prove that the agreement is a bailment contract, the property was deposited with the depositary, a demand was made for the property, and the depositor failed to return the property. *See* 9 Cal. Jur. 3d *Bailments* § 50 (2021); *see also Gebert*, 172 Cal. App. 3d 544 at 55152; Cal. Civ. Code §§ 1814 & 1823. It is undisputed that Kingston's cargo was deposited with Statewide.[75] It is also undisputed that none of the Defendants could return the stolen cargo and that Kingston presumably wanted it back, as evidenced by Kingston's filing of a notice of claim and subrogation receipt.[76] But again, no facts support the conclusion that Kingston's cargo was deposited with either Expeditors or Landstar, even if both were involved with sourcing Statewide as the motor carrier subcontractor.[77] The lack

---

[75]    Expeditors' SUFCL ¶ 44.

[76]    *Id.* at ¶¶ 52 & 53.

[77]    *See id.* at ¶¶ 8, 16, 28, 35-38, 42, & 44-46; Kingston's SSUF ¶¶ 37, 42.

1  of evidence demonstrating actual possession thereby renders the bailment claim
2  unviable, as Kingston has not fulfilled the most crucial element of bailment.

          **c.**      **Conclusion on Bailment**

4          Accordingly, concluding that a claim of bailment cannot succeed
5  irrespective of the Contract of Carriage's validity, the Court hereby **GRANTS**
6  Expeditors' Motion for Summary Judgment and **DISMISSES** Kingston's first
7  claim for relief.

        **2.**     **Negligence**

          **a.**      **Applying Washington's Law of Negligence**

10          In Washington, negligence is the failure to exercise ordinary, reasonable
11  care. *See Hendrickson v. Moses Lake Sch. Dist.*, 192 Wash. 2d 269, 276 (2018).
12  "It is the doing of some act that a reasonably careful person would not do under
13  the same or similar circumstances or the failure to do some act that a reasonably
14  careful person would have done under the same or similar circumstances." *See*
15  16 Wash. Prac. Series, *Tort Law and Practice* § 2:54 (5th ed. 2021).  To prove an
16  actionable claim for negligence, a plaintiff must show "(1) the existence of a duty
17  to the complaining party, (2) a breach of that duty, (3) a resulting injury, and
18  (4) that the breach was the proximate cause of the injury." *Reynolds v. Hicks*,
19  134 Wash. 2d 491, 495 (1998).  For any "carrier that issues a bill of lading,
20  whether negotiable or nonnegotiable," it "shall exercise the degree of care in
21  relation to the goods which a reasonably careful person would exercise under
22  similar circumstances."  Wash. Rev. Code Ann. § 62A.7-309.

23          Expeditors argues that Kingston's negligence claim should be dismissed
24  under Washington's independent duty doctrine, citing *Donatelli v. D.R. Strong*
25  *Consulting Engineers, Inc.*, 179 Wash. 2d 84, 92 (2013).  Expeditors construes
26  that doctrine as providing that Kingston may recover on its negligence claim

only if there is a breach of a duty independent of the contract.[78]  But the Court finds that the independent duty doctrine is inapplicable, since Washington courts apply it only to a "narrow class of cases" where the claims "aris[e] out of construction on real property and real property sales."  *Id.* (internal citations omitted).  This action is not a real estate case.

In response, Kingston reasserts that its negligence claim is more than a restatement of its breach of contract claims.[79]  Kingston maintains that Expeditors and Landstar failed to store, protect, safeguard, and care for the cargo properly and that Expeditors, in particular, was negligent in its subcontracting.[80]

Whether Expeditors did in fact breach its duty of care is a question of fact. Assuming that the Contract of Carriage remains intact, Kingston would bear the burden of proof, per the terms of the Contract.[81]  However, Expeditors makes no argument in its brief why it did not breach its duty.  Expeditors concedes that Statewide's drivers violated the security requirement because they made an "unauthorized stop" where "both were away from the tractor-trailer."[82] Expeditors makes no argument to suggest that Statewide's drivers' "unauthorized stop" was not the proximate cause of the cargo's disappearance, since it provided the thieves with time to escape.[83]  Indeed, Expeditors can only quip that "[t]here is, of course, no evidence that Expeditors or any other

---

[78]     Motion 18:27-19:3.

[79]     Opposition 18:19-19:11.

[80]     Expeditors' SUFCL ¶ 21.

[81]     "Shipper agrees that Expeditors shall only be liable to Shipper for any loss or damage to any Goods tendered to Expeditors hereunder to the extent of Expeditors' or its agents' own negligence, and Shipper shall have the burden of proof as to any such negligence." Contract 2, ¶ 19(a).

[82]     Kingston's SSUF ¶ 44.

[83]     *See generally* Motion.

-26-

1  defendant *intentionally* caused the Cargo's partial loss."[84]  Expeditors makes no

2  other mention of negligence in its Reply.[85]  In view of that silence and its other

3  concessions, the Court finds it inappropriate to award Expeditors summary

4  judgment on Kingston's negligence claim.

> **b.** **Applying the Law from a Choice-of-Law Analysis for**
> **Negligence**

7  Assuming that the Contract of Carriage is invalid, the Court would once

8  again return to its choice-of-law analysis.  Here, though, the Court need not

9  proceed past its first step, as the laws related to negligence are not materially

10  different.  *Compare Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996) (the

11  "well established" elements of a cause of action for negligence are "(a) a legal

12  duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the

13  proximate or legal cause of the resulting injury") *with Pipher v. Parsell*, 930 A.2d

14  890, 892 (Del. 2007) (to establish a negligence claim, a "plaintiff must establish

15  that defendant owed plaintiff a duty of care; defendant breached that duty; and

16  defendant's breach was the proximate cause of plaintiff's injury") (internal

17  quotations omitted).  Accordingly, the Court concludes that the outcome would

18  be the same under either California or Delaware law.

> **c.** **Conclusion on Negligence**

20  Regardless which state's law is applied, summary judgment in favor of

21  Expeditors is not warranted because a material issue of fact persists regarding

22  the question of breach.  Accordingly, the Motion is **DENIED** with respect to

23  Kingston's second claim for relief.

> **V.  CONCLUSION**

25  For the foregoing reasons, the Court hereby **ORDERS** as follows:

---

84  Reply 3:24-25 (emphasis added).

85  *See generally id.*

-27-

1.     Expeditors' Motion for Summary Judgment with respect to bailment is **GRANTED**.  Kingston's first claim for relief is **DISMISSED with prejudice**.

2.     Expeditors' Motion for Summary Judgment with respect to Kingston's second, third, fourth, and fifth claims for relief is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 9, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE